UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| COOP'S PRETZELS, LLC,<br><br>                    Plaintiff,<br><br>      vs.<br><br>INTERTAPE POLYMER CORP., d/b/a<br>Nortech Packaging, LLC, d/b/a Tishma<br>Technologies, LLC,<br><br>                    Defendant. | 4:21-CV-04132-KES<br><br>ORDER DENYING DEFENDANT'S<br>MOTION TO DISMISS |

Pending before the court is defendant, Intertape Polymer Corp.'s, motion to dismiss plaintiff, Coop's Pretzels, LLC's, claim for consequential and incidental damages in the Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Docket 35. Coop's Pretzels opposes Intertape's motion. Docket 37.

Originally, in an Amended Complaint Coop's Pretzels brought suit against Intertape alleging claims of (1) breach of contract, (2) breach of express warranty, (3) breach of implied warranty of merchantability, (4) breach of implied warranty of fitness for a particular purpose, and (5) unjust enrichment. Docket 5. Intertape moved to dismiss Coop's Pretzels' Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Docket 11. The court granted in part and denied in part Intertape's motion to dismiss. Docket 19. The court granted Intertape's motion with respect to Coop's Pretzels' claims for breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and unjust enrichment. *See id.* at

24. The court also dismissed the portion of the Amended Complaint seeking incidental and consequential damages as it relates to the breach of contract claim. *See id.* at 15-16.

After the court's order, Coop's Pretzels filed a Second Amended Complaint, alleging claims of (1) breach of contract and (2) breach of express warranty. Docket 24. Intertape moved to dismiss Coop Pretzels' claim for consequential and incidental damages. Docket 26.

Coop's Pretzels subsequently filed a Third Amended Complaint against Intertape, alleging the same causes of action as it did in its Second Amended Complaint. Docket 32. Intertape again moves to dismiss Coop's Pretzels' claim for consequential and incidental damages. Docket 35.[1] For the following reasons, the court denies Intertape's motion.

## FACTUAL BACKGROUND

Many of the facts Coop's Pretzels alleged in the Third Amended Complaint are the same as the facts alleged in the Amended Complaint, which the court has already recounted. *See* Docket 19 at 2-6. The court summarizes these facts and recounts the new alleged facts, accepted as true, that Coop's Pretzels states in its Third Amended Complaint.

Coop's Pretzels is a food manufacturing and packaging company owned and operated by Nolan Wiese. Docket 32 ¶ 6. Coop's Pretzels produces packaged food products, including pretzels, to ship to various vendors

---

[1] The court denied Intertape's motion to dismiss Coop Pretzels' Second Amended Complaint as moot because Coop Pretzels had filed a Third Amended Complaint. Docket 33.

throughout the United States for distribution. *Id.* Intertape operates under the names Nortech Packaging and Tishma Technologies. *Id.* ¶ 3.

On or about January 19, 2021, Intertape submitted a proposal to Coop's Pretzels for the sale of a Pouch Machine, along with a Purchase Agreement, under which Coop's Pretzels agreed to pay Intertape for the cost of the Pouch Machine plus installation fees. [2] *Id.* ¶¶ 7, 10. On or about February 10, 2021, Coop's Pretzels submitted its purchase order for the purchase of the Pouch Machine. *Id.* ¶ 9. The Purchase Agreement is included in the record at Docket 13-1.[3] The Purchase Agreement required Intertape to deliver the Pouch Machine with a functioning pouch carrier system, as well as pouch opening, pouch filling, and pouch sealing functions. Docket 32 ¶ 12. The final purchase price of the Pouch Machine was $227,790.00. *Id.* ¶ 18. Coop's Pretzels agreed to pay 50% of the total purchase price up front at the time of the purchase order. *Id.* ¶ 19.

Coop's Pretzels alleges that Provision 12 of the Purchase Agreement is procedurally and substantively unconscionable and against public policy. *Id.* ¶

---

[2] While the Third Amended Complaint suggests Intertape sent the Purchase Agreement to Coop's Pretzel's after Coop's Pretzels submitted its purchase order, the parties agree that Intertape sent the Purchase Agreement on or about January 19, 2021, along with the proposal. *See* Docket 12 at 2; Docket 15 at 9.

[3] In its Third Amended Complaint, Coop's Pretzels states that it "did not accept or consent to the terms of the Purchase Agreement, and some of the terms set forth within the Purchase Agreement are unconscionable and against public policy." Docket 32 ¶ 13. But Coop's Pretzels has previously conceded that the Purchase Agreement's terms were incorporated into the parties' agreement. Docket 15 at 9-10.

14-15. Coop's Pretzels further alleges that because Provision 12 provides a limitation of damages, Intertape's repeated failure to provide a Pouch Machine in working condition caused consequential and incidental damages. *Id.* ¶ 15. Additionally, Coop's Pretzels alleges that the language in Provision 12 is substantially similar to the language provided in many similar purchase agreements for similar pouch machines made by other manufacturers and was presented to Coop's Pretzels as a "take-it-or-leave-it" Purchase Agreement. *Id.* ¶ 16. Coop's Pretzels alleges that it had limited bargaining power to negotiate the Purchase Agreement's terms, nor was it in any position to determine whether the Pouch Machine would fail to properly operate as designed. *Id.* ¶¶ 16-17.

On or about April 27, 2021, Coop's Pretzels submitted a purchase order requesting installation of the Pouch Machine at its facility in Tea, South Dakota by June 11, 2021. *Id.* ¶¶ 20-21.

On or about June 1, 2021, prior to the Pouch Machine's installation, Nolan Wiese attended a Factory Acceptance Test for the Pouch Machine at Intertape's Facility in Schaumburg, Illinois. *Id.* ¶ 22. At the Factory Acceptance Test, Intertape's agents ran the Pouch Machine to demonstrate to Wiese that it was in good working order. *Id.* At the Factory Acceptance Test, the Pouch Machine's grippers did not work properly because they were loose. *Id.* ¶ 24. Wiese pointed the gripper issues out to Intertape's agents at the Factory Acceptance Test. *Id.* ¶ 25. Intertape's agents assured Wiese that they would correct the gripper issues before installation at Coop's Pretzels' facility. *Id.* In a quality checklist assessment following the Factory Acceptance Test, Wiese

4

indicated there were numerous issues, including the gripper issues, that still needed to be remedied before the Pouch Machine operated correctly. *Id.* ¶ 27-28. Intertape's agents again assured Wiese that Intertape would fix the loose grippers and the other issues Wiese raised prior to delivery. *Id.* ¶ 29.

Wiese paid the additional 40% of the total price for the Pouch Machine in reliance upon Intertape's assurances that the Pouch Machine would be in good working order upon delivery. *Id.* ¶ 30.

On or about June 7, 2021, Intertape delivered and began installation of the Pouch Machine at Coop's Pretzels' facility. *Id.* ¶ 32. Upon installation, Intertape's agents assured Coop's Pretzels that it had remedied the issues identified by Wiese at the Factory Acceptance Test, and that the machine should work as designed. *Id.* ¶ 33.

On June 25, 2021, Coop's Pretzels ran the Pouch Machine for the first time to begin production for a large order for one of its most significant clients. *Id.* ¶ 34. After only a couple of hours, the Pouch Machine's grippers began failing. *Id.* ¶ 35. Wiese immediately contacted Intertape to inform it of the gripper failure and that the problems were causing substantial delays in the production of its order as well as wasted materials and product. *Id.* ¶ 36. On June 26, 2021, an Intertape representative called Wiese multiple times to troubleshoot the Pouch Machine. *Id.* ¶ 37. The grippers still failed, and the Pouch Machine did not work properly. *Id.* ¶ 38. Intertape's representative told Wiese that it would send out a technician to work on the Pouch Machine the

next morning. *Id.* ¶ 39. Intertape also mailed additional grippers to Coop's

Pretzels. *Id.* ¶ 40.

Intertape's technician arrived on the morning of June 27, 2021, but the

technician's attempted repairs were unsuccessful. *See id.* ¶¶ 41, 42. The

technician left town on June 29, 2021. *Id.* ¶ 43. Shortly after, Coop's Pretzels

ran the Pouch Machine again, and the grippers failed within minutes. *Id.* ¶ 44.

Wiese again notified Intertape of the gripper issues. *Id.*

On July 1, 2021, Wiese demanded that Intertape pick up the Pouch

Machine and refund Coop's Pretzels. *Id.* ¶ 45. Intertape advised Wiese that the

Pouch Machine only needed newly designed grippers, which would allow the

machine to run as designed. *Id.* ¶ 46. After demanding a refund, Wiese agreed

to allow Intertape to send the new grippers. *Id.* ¶ 47.

On July 2, 2021, Intertape sent the newly designed grippers to Coop's

Pretzels. *Id.* ¶ 48. The grippers arrived at Coop's Pretzels' facility on July 3,

2021. *Id.* That day, Wiese spent two hours installing the grippers as directed by

Intertape's representatives. *Id.* ¶ 49. After installing the new grippers, Coop's

Pretzels attempted to run the Pouch Machine, but the grippers failed again

within minutes. *Id.* ¶¶ 50-51. Springs and a bolt on the Pouch Machine also

snapped off, causing a significant personnel and food safety risk at the facility.

*Id.* ¶52. Additionally, the locking nuts on the new grippers rubbed against the

Pouch Machine carriage and created metal shavings, causing further food

safety risks. *Id.* ¶ 53.

Coop's Pretzels had to pay its employees for substantial overtime hours to monitor the machine and manually adjust the grippers to continue production of the overdue pretzel shipment. *Id.* ¶ 54. During that time, more springs began to break off the Pouch Machine, creating a dangerous environment for Coop's Pretzels and its employees. *Id.* ¶ 55. Coop's Pretzels also lost a substantial amount of food product, nitrogen, and packaging as a result of the defective Pouch Machine. *Id.* ¶ 56.

On July 7, 2021, Coop's Pretzels again demanded a refund in exchange for the Pouch Machine. *Id.* ¶ 57. Intertape refused, insisting it should get another opportunity to fix the Pouch Machine *Id.*¶ 58. Intertape relied on Provision 12 of the Purchase Agreement, contending that Intertape "at its sole discretion" was able to elect the remedy for the defective Pouch Machine. *Id.* ¶ 59; *see id.* ¶ 14. Because of Intertape's refusal to give a refund, Coop's Pretzels alleges it was left with only two options: (1) shut down production of its product completely; or (2) continue attempting to run the defective Pouch Machine, causing additional consequential and incidental damages in the form of lost product, lost packaging, lost nitrogen, and paying overtime wages to Coop's Pretzels' employees. *Id.* ¶ 60. To mitigate its damages, Coop's Pretzels stopped using the Pouch Machine and ordered a different machine from a different manufacturer. *Id.* ¶ 61.

In its Third Amended Complaint, Coop's Pretzels alleges claims of breach of contract and breach of express warranty. *Id.* ¶¶ 62-73. Coop's Pretzels seeks to recover $227,790.00, incidental and consequential damages, pre-judgment

and post-judgment interest, and its costs and disbursements. *Id.* at 10.
Intertape moves to dismiss Coop's Pretzels' claim for consequential and
incidental damages. Docket 35.

## LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which
relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss,
a complaint must contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662,
678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A
claim has facial plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the defendant is liable
for the misconduct alleged." *Id.* "The plausibility standard is not akin to a
probability requirement, but it asks for more than a sheer possibility that a
defendant has acted unlawfully." *Id.* (internal quotation omitted). The court
determines plausibility by considering the materials in the pleadings and
exhibits attached to the complaint, by drawing on experience and common
sense, and by viewing the plaintiff's claim as a whole. *Whitney v. Guys, Inc.*,
700 F.3d 1118, 1128 (8th Cir. 2012). Inferences are construed in favor of the
non-moving party. *Id.* at 1129 (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d
585, 595 (8th Cir. 2009)). A well-pleaded complaint should survive a motion to
dismiss "even if it strikes a savvy judge that actual proof of those facts is
improbable, and that a recovery is very remote and unlikely." *Twombly,* 550
U.S. at 556 (internal quotation omitted).

"When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cnty.*, 880 F.3d 990, 992 (8th Cir. 2018) (citation omitted). Specifically, "[i]n a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003). Where the "claims [of the Third Amended Complaint] relate to a written contract . . . we consider the language of the contract when reviewing the sufficiency of the complaint." *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010). "This is true even if contract documents not attached to the complaint refute a . . . claim that defendant breached a statutory or common law duty." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).

State law governs the interpretation of a contract when diversity of citizenship is the basis for federal jurisdiction. *See Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012). In determining which state's law applies, the court looks to the choice of law principles of the forum state. *Am. Fire & Cas. Co. v. Hegel*, 847 F.3d 956, 959 (8th Cir. 2017). Under South Dakota law, courts honor contractual choice-of-law provisions unless they contravene South Dakota public policy. *See Dunes Hosp., L.L.C. v. Country Kitchen Int'l, Inc.*, 623 N.W.2d 484, 488 (S.D. 2001). Here, the parties agree the Purchase Agreement contains an Illinois choice-of-law provision, and thus

9

Illinois law governs this dispute unless it contravenes South Dakota public policy. *See* Docket 36 at 3; Docket 37 at 18; Docket 13-1 at 6 ¶ 20; *O'Neil Farms, Inc., v. Reinert*, 780 N.W.2d 55, 58 (S.D. 2010); *Miller v. Honkamp Krueger Fin. Serv., Inc.*, 9 F.4th 1011, 1017 (8th Cir. 2021). The court first considers whether Provision 12 is unconscionable under Illinois law, and if so, whether that finding contravenes South Dakota public policy.

## DISCUSSION

### I.  Unconscionable

To determine whether Provision 12 of the Purchase Agreement is unenforceable, the court turns to whether Coop's Pretzels has plausibly pleaded that Provision 12 of the Agreement is unconscionable. *See Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512-13 (8th Cir. 2018) (considering whether plaintiff plausibly pleaded contract to be unconscionable in Rule 12(b)(6) motion).

As an initial matter, Intertape repeatedly quotes the court's previous order dismissing the portion of Coop's Pretzels' Amended Complaint seeking consequential and incidental damages, and specifically quotes the portion of the order stating "the limitation of damages provision is valid and enforceable." *See* Docket 36 at 5, 13. To the extent Intertape suggests that this statement ends the inquiry, the court rejects such suggestion. Rather, the court in its previous order specifically noted that "it [was] not necessary for the court to determine whether the limitation of damages provision [was] unconscionable because Coop's Pretzels did not allege unconscionability of the provision in its

Amended Complaint." *See* Docket 19 at 15. Here, Coop's Pretzel has filed a Third Amended Complaint, and the court now evaluates this new complaint rather than the old one. *See In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) ("It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect.").

The parties also disagree on what facts the court can consider when deciding whether Provision 12 of the Agreement is unconscionable. In arguing for the provision's unconscionability, Coop's Pretzels points to the events that took place after the parties signed the agreement, such as the multiple requests Coop's Pretzel's made to Intertape for Interstate to repair the Pouch Machine. *See* Docket 37 at 10-13.

Intertape, on the other hand, argues "the Pouch Machine's operation is irrelevant to whether the damages limitations provision is unconscionable." *See* Docket 36 at 10, 13; *see also* Docket 38 at 5-6. Under Intertape's view, "unconscionability is determined based on the facts as they existed at the time the contract was formed." *See* Docket 36 at 13. In support, Intertape cites 810 Ill. Comp. Stat. § 5/2-302, which provides that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable *at the time it was made* the court may refuse to enforce the contract[.]" (emphasis added).

The Illinois Supreme Court has explicitly rejected Intertape's view. *See Razor v. Hyundai Motor of Am.*, 854 N.E.2d 607, 621 (Ill. 2006). The court stated, "[t]he unconscionability determination is not restricted to the facts and

11

circumstances in existence at the time the contract was entered into." *Id.* As the court explained, § 2-719 of the Uniform Commercial Code (UCC), which Illinois law follows for the sale of goods, specifically contemplates post-contract formation events in determining whether a provision limiting consequential damages is unconscionable. *See* 810 Ill. Comp. Stat. § 5/2-719(3). Specifically, § 2-719 provides that "[l]imitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." *Id.* The nature of one's injuries—whether they are to the person or commercial—become apparent only *after* the parties have formed the contract. Additionally, the comments to this UCC provision make clear that a clause that excludes consequential damages "may not *operate in an unconscionable manner.*" 810 Ill. Comp. Stat § 5/2-719, Uniform Commercial Code Comment 3 (emphasis added). In summary, Illinois contemplates an analysis of how the relevant provision actually plays out in practice, which necessarily means considering facts that occurred after the parties made the contract.

Intertape relies on 810 Ill. Comp. Stat. § 5/2-302 and *Al Maha Trading & Cont.'ing Holding Co. v. W.S. Darley & Co.*, 936 F. Supp. 2d 933, 943 (N.D. Ill. 2013). *See* Docket 38 at 5. But neither of these sources deal specifically with whether a provision limiting or excluding consequential damages is unconscionable. Rather, the title of the part to which § 5/2-302 belongs indicates that this section deals with the "general" construction of a contract. Similarly in *Al Maha*, although the court did in fact find the ultimate outcome

of the contract—i.e. the fire trucks the plaintiff purchased were useless for their circumstances because they required fuel that was unavailable in the plaintiff's location—to be irrelevant in evaluating the substantive unconscionability of the contract, the provision at issue did not involve a term that limited consequential damages. *See* 936 F. Supp. 2d at 937, 943. Rather, the plaintiff's sole contention in *Al Maha* was that the nearly three million dollar contract the plaintiff signed for six fire trucks was unconscionable because the trucks were "useless" for the plaintiff. *See id.*

Here, this case deals with a specific determination of whether a provision of the contract is unconscionable: namely, whether Provision 12's removal of consequential and incidental damages is unconscionable. Because the Illinois Supreme Court has expressly found post-contract facts to be relevant in determining unconscionability in a similar context, the court reject's Intertape's argument. The court considers Coop's Pretzels's well-pleaded factual allegations[4] about what happened after the parties signed the agreement in determining whether the agreement was unconscionable.

_____

[4] Intertape points out that some of Coop's Pretzels arguments about whether Provision 12 is unconscionable rely on facts that Coop's Pretzels failed to plead in its Third Amended Complaint. *See* Docket 38 at 1-3. Intertape argues the court must not consider such factual allegations. *See id.* at 2-3. The court agrees, and only considers facts Coop's Pretzels properly pleaded in its Third Amended Complaint. *Cf. Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1140 (8th Cir. 2014) (refusing to consider plaintiff's attempt to dismiss various causes of action in opposition to motion to dismiss because plaintiffs may not amend their complaint through memorandums or briefs).

The court next discusses the relationship between a limitation of remedy provision and an exclusion of consequential damages provision, both of which are present in this case. *See* Docket 13-1 at 5-6. With respect to limitation of remedies, Illinois contract law provides:

> (a) the agreement may . . . limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

> (b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

810 Ill. Comp. Stat. § 5/2-719(1). It further provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act." *See id.* § 5/2-719(2).

But even if the contract's remedy fails its essential purpose, and thus a party may potentially be entitled to damages as allowed under the UCC, that does not necessarily entitle a party who has signed a contract that separately bars recovery of consequential damages to recover such damages. *See Razor*, 854 N.E.2d at 616-18 (adopting "independent approach" to limitation of remedy and limitation of consequential damages). As *Razor* explains, "a limitation of consequential damages must be judged on its own merits and enforced unless unconscionable, regardless of whether the contract also contains a limitation of remedy which has failed of its essential purpose." *Id.* at 617. Thus, "if both types of warranty limitations are contained in a written warranty, a plaintiff must prove both an unreasonable amount of time or number of attempts to repair (to overcome the restriction on repair or replacement as the sole remedy)

14

and that it would be unconscionable to enforce the exclusion of consequential damages (to overcome that exclusion)." *See Zwicky v. Freightliner Custom Chassis Corp.*, 867 N.E.2d 527, 535 (Ill. App. Ct. 2007).

Intertape argues that because of this independent inquiry, "Intertape's remedial options and efforts under the Purchase Agreement are irrelevant to determining whether the damage limitation provision is unconscionable." *See* Docket 38 at 4. It further argues that the mere fact that Intertape limited consequential damages cannot make it unconscionable, particularly because 810 Ill. Comp. Stat. § 5/2-719(3) expressly allows parties to exclude consequential damages unless the exclusion is unconscionable. *See* Docket 38 at 5. While a provision limiting consequential damages alone is not enough to demonstrate unconscionability, as explained above, the alleged breaching party's actions in response to remedying (or not remedying) the situation *is* relevant to determine unconscionability. *See Razor*, 854 N.E.2d at 621-22.

In fact, *Razor* expressly held that "[a] seller's deliberate or negligent failure to supply a limited remedy can be taken into consideration in determining whether enforcement of a consequential damages waiver is unconscionable." *Id.* at 621. Indeed, Illinois provides that "[e]very contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement." *See* 810 Ill. Comp. Stat. § 5/1-304; *see also Razor*, 854 N.E.2d at 619 ("[T]he seller's bad faith is a possible basis for finding enforcement of a limitation of consequential damages to be unconscionable."). Thus, the court rejects Intertape's contention that remedial

15

options and efforts under the Purchase Agreement are irrelevant; rather, Intertape's efforts are directly relevant to whether it acted negligently or with bad faith, which in turn factors into the unconscionability analysis. *See Razor*, 854 N.E.2d at 621.

The court now turns to Illinois law to determine what constitutes an unconscionable contract. "A finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 263 (Ill. 2006).

### A.    Procedural Unconscionability

"Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it[.]" *Id.* at 264 (citation omitted). "This analysis also takes into account the disparity of bargaining power between the drafter of the contract and the party claiming unconscionability." *Bess v. DirecTV, Inc.*, 885 N.E.2d 488, 237 (Ill. App. Ct. 2008) (quoting *Kinkel*, 857 N.E.2d at 264). Courts also consider the circumstances surrounding the transaction, including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print. *See Timmermann v. Grain Exchange, LLC*, 915 N.E.2d 113, 117 (Ill. App. Ct. 2009). The "conspicuousness of the clause . . . [is] important, albeit not [a] conclusive factor[] in determining the issue of unconscionability." *Id.* (quoting *Frank's Maint. & Eng'g, Inc.*, 408 N.E.2d 403, 410 (Ill. App. Ct. 1980)).

16

Here, Coop's Pretzels argues several factors indicate procedural unconscionability. First, Coop's Pretzels highlights that the limitation of damages clause is located on the back of the Purchase Agreement, and that Intertape "never drew any attention to the fact that it was limiting the damages available to Coop's Pretzels in the event that the Pouch Machine failed to correspond with Defendant's promises." *See* Docket 37 at 14. But Provision 12 of the Purchase Agreement is not "so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it[.]" *See Bess*, 885 N.E.2d at 237 (citation omitted). While the text is towards the back of the Purchase Agreement, the Purchase Agreement itself is only six pages. *See* Docket 13-1. The relevant provision is not buried in a significantly lengthy document. Thus, the mere fact that the provision is towards the back of the document does not alone indicate procedural unconscionability.

Additionally, the font size of Provision 12 is legible, and unlike in *Frank's*, where the relevant clause had been "stamped over," rendering it "practically illegible," the Purchase Agreement had nothing obscuring a reader from reading and understanding Paragraph 12. *See* 408 N.E.2d at 405; Docket 13-1 at 5-6.

Coop's Pretzels also argues that it "lacked bargaining power because the language in the Purchase Agreement is substantially similar to the language provided in many purchase agreements for similar machines made by other manufacturers." *See* Docket 37 at 14-15; Docket 32 at ¶¶ 15-16. Similarly, Coop's Pretzels alleges that Intertape presented the Purchase agreement as a

"take-it-or-leave-it" contract in which Coop's Pretzels had no practical ability to negotiate. *See* Docket 32 ¶ 16.

But these facts alone are not enough to show procedural unconscionability. *See Zuniga v. Major League Baseball*, 196 N.E.3d 12, 21 (Ill. App. Ct. 2021). The court in *Zuniga* explained, "a provision contained in a consumer contract will not be found procedurally unconscionable merely because a business sought to impose it through a standardized, take-it-or-leave-it contract over which the consumer had no ability to negotiate[.]" *Id.* Instead, "there must be 'some added coercion or overreaching' beyond these characteristics for a court to find that a contractual provision is procedurally unconscionable.' " *Id.* (quoting *Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 882 N.E.2d 157, 233 (Ill. App. Ct. 2008). Although *Zuniga* dealt with a consumer whereas Coop's Pretzels is a business, if anything, that fact cuts *against* Coop's Pretzels, because *Zuniga* explained that procedural unconscionability "protects individual consumers who contract with commercial entities *at least as much* as it protects businesses that contract with other businesses." *Id.* (emphasis added).

Here, Coop's Pretzels has not alleged that Intertape engaged in any kind of coercion or overreaching. To the contrary, based on Coop's Pretzels' factual allegations, Coop's Pretzels had over three weeks to review this Purchase Agreement: Coop's Pretzels received the Purchase Agreement on or about January 19, 2021, and did not submit a purchase order until February 10, 2021. *See* Docket 32 ¶¶ 7, 9. This case is not one in which Intertape pressured

Coop's Pretzels into reading and agreeing to the Purchase Agreement's terms on the spot. Coop's Pretzels stresses the fact that Intertape never disclosed the provision that limited Intertape's liability during negotiations. *See* Docket 37 at 14. But Coop's Pretzels does not allege this fact in its Third Amended Complaint, and thus the court does not consider it. *See Thomas*, 743 F.3d at 1140. Even if it did, the court finds Coop's Pretzels had ample time to review the contract, and that the contract clearly spelled out its terms in conditions such that it was not procedurally unconscionable.

Finally, Coop's Pretzels cites *Braun v. E.I. du Pont De Nemours & Co.*, 2006 WL 290552, at *8 (D.S.D. 2006). In *Braun*, the court declined to grant summary judgment for the defendant, who argued the contract was not procedurally unconscionable. *See id.* That case involved commercial farmers who had purchased herbicides, in which all herbicides available on the market contained similar provisions as the one at issue in that case. *See id.* Because the plaintiffs "c[ould] avoid the limitation of remedies and consequential damages provisions only by electing to apply no herbicides to their crops[,]" and because the farmers "[were] also in no better position than any less experienced farmer to determine whether the product [would] fail[,]" the court found genuine issues of material fact on whether the contract was procedurally unconscionable. *See id.*

Coop's Pretzels argues its situation is analogous to *Braun*, because similar to the farmers in *Braun*, "Coop's Pretzels could not possibly know that the Pouch Machine would fail until after it was used, and the product

19

packaging nitrogen, and many employment hours had already been wasted." *See* Docket 37 at 15-16. But *Braun* is distinguishable, because the court in *Braun* interpreted South Dakota law, and the South Dakota Supreme Court had previously held that clauses set out in an herbicide label were unconscionable and against public policy because they would "leave the pesticide user without any substantial recourse for his loss." *Braun*, 2006 WL 290552, at *5 (quoting *Durham v. Ciba-Geigy Corp.*, 315 N.W.2d 696, 700 (S.D. 1982)). Thus, because *Braun* dealt with South Dakota law—and here the procedural unconscionability inquiry deals with Illinois law—the court finds *Braun* to be less persuasive on this issue. As discussed above, Illinois courts require more than the mere allegation that Coop's Pretzels had less bargaining power than Intertape to find procedural unconscionability. *See Zuniga*, 196 N.E.3d at 21. Coop's Pretzels has not done so.

In summary, the court finds that Paragraph 12 of the Purchase Agreement was not procedurally unconscionable. The court now turns to substantive unconscionability.

## B.   Substantive Unconscionability

"Substantive unconscionability concerns the question whether the terms themselves are commercially reasonable." *Frank's*, 408 N.E.2d at 410. "Reasonable agreements which limit or modify remedies will be given effect but the parties are not free to shape their remedies in an unreasonable or unconscionable way." *Id.* In *Kinkel*, the Illinois Supreme Court adopted the following definition of substantive unconscionability:

> Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity.

857 N.E.2d at 267 (cleaned up). As noted above, the court in *Razor* made clear that "[a] seller's deliberate or negligent failure to supply a limited remedy can be taken into consideration in determining whether enforcement of a consequential damages waiver is unconscionable." 854 N.E.2d at 621.

Here, Paragraph 12 states in relevant part:

> In the event that an item of Machinery shall prove to be defective in materials, design or workmanship during the aforesaid warranty period, [Intertape] shall, *in its sole discretion*, repair said defective item of Machinery, replace it or credit [Coop's Pretzels'] account for the cost to [Coops Pretzels] of the same from [Intertape] and [Coop's Pretzels] shall, at [Intertape's] option, return the defective item of Machinery to [Intertape] or dispose of it at [Coop's Pretzels'] cost and expense.

*See* Docket 13-1 at 5 (emphasis added). Paragraph 12 continues:

> [Intertape's] liability . . . shall be limited solely to the cost of any necessary repairs to, replacements of or refunds of the applicable portion of the Purchase Price for, the Machinery and [Intertape] assumes no risk of, and *shall not in any case be liable for, any other damages, including, without limitation, any special, incidental, consequential or punitive damages,* arising from breach of warranty or contract, negligence or any other legal theory, including, without limitation, loss of goodwill, profits or revenue, loss of use of the Machinery or any associated equipment, cost of capital, cost of any substitute equipment, facilities or services, downtime costs, or claims of any party dealing with [Coop's Pretzels] for such damages.

*Id.* at 6 (emphasis added). Putting these provisions together, Intertape had sole discretion to determine what to do in the event the Pouch Machine was defective, and simultaneously denied Coop's Pretzels recovery of any potential incidental or consequential damages that may result from Intertape's potential failed attempts of addressing a defective machine. *See id.* at 5-6. As Coop's Pretzels states in its brief, Provision 12 allows Intertape "an unlimited number of attempts to fix the Pouch Machine, even if it meant those attempts would detrimentally impact Coop's Pretzels." *See* Docket 37 at 11. Although the provision's text alone may not be enough to declare it unconscionable, the court is not bound to just the text. *See Razor*, 854 N.E.2d at 621.

In addition to the provision's text, Coop's Pretzels has also alleged that it repeatedly brought to Intertape's attention the defects of the Pouch Machine, which Intertape had never properly fixed. The Third Amended Complaint alleges at least five different opportunities for Intertape's repair of the Pouch Machine: (1) Wiese pointed out the loose grippers to Intertape's agents at the Factory Acceptance Test and Intertape's agents assured Wiese they would work correctly before installation; (2) following installation of the machine, Intertape's agents assured Coop's Pretzels that the gripper issues identified at the Factory Acceptance Test were resolved; (3) Intertape attempted to repair the Pouch Machine by troubleshooting over the phone with Wiese; (4) Intertape sent its own technician to Coop's Pretzels' facility to work on the Pouch Machine on June 27, 2021, and June 28, 2021; and (5) Intertape sent new

grippers to Wiese and had him attempt to replace the defective ones on July 3, 2021. Docket 32 ¶¶ 22-29, 32-33, 35-38, 39-42, 44-51.

Coop's Pretzels also asked for a refund on at least two occasions. *See id.* ¶¶ 45, 47, 57. Intertape refused both times, and instead insisted on attempting to fix the Machine. *Id.* ¶¶ 46, 58. By the time Coop's Pretzels had requested its refund on July 7, 2021, nearly two weeks had passed since Coop's Pretzels began running the Pouch Machine to produce a large order for one of its most significant clients. *Id.* ¶¶ 34, 57. The extended time frame and the repeated attempts that Coop's Pretzels' took to get Intertape to fix the problem is sufficient to suggest Intertape acted negligently or in bad faith. *See Razor*, 854 N.E.2d at 621.

Although Intertape claims that it "has never claimed the Purchase Agreement provides an infinite number of repair opportunities," there is no stopping point under Provision 12. *See* Docket 38 at 4; Docket 13-1 at 5-6. Rather, the text explicitly provides that Intertape had sole discretion to choose a remedy, which included insisting that Intertape repair the Pouch Machine. *See* Docket 13-1 at 5-6. And as it played out in this case, that's precisely what happened: Coop's Pretzels repeatedly brought the Pouch Machine's defects to Intertape's attention over the course of two weeks, and Intertape repeatedly insisted on trying to fix the problem. Intertape's failure to timely address the problem resulted in Coop's Pretzels having to pay workers more overtime hours, losing substantial amounts of food, nitrogen, and packaging, and dealing with overdue shipments. *See* Docket 32 at ¶¶ 54-56. Coop's Pretzels

23

also had to purchase a different Pouch Machine to be able to keep up with production. *See id.* ¶ 61. Thus, based on the Provision's express text allowing Intertape unlimited attempts to fix the Pouch Machine, coupled with Intertape's numerous attempts to fix the problem, Intertape's continued failure to fix the problem in a timely manner, and Coop's Pretzels' inability to recover consequential and incidental damages, the court finds that it is plausible that the provision excluding consequential and incidental damages, as alleged, operated in a substantively unconscionable way.

Intertape argues that because Coop's Pretzels alleges that Provision 12 "is substantially similar to the language provided in many similar purchase agreements for similar pouch machines made by other manufacturers," this admission shows that the damages limitation is "neither unusual nor extraordinary." *See* Docket 36 at 12 (quoting Docket 32 ¶ 16). Intertape reasons that if the court found this language to be unconscionable, "most damages limitations provisions within the parties' industry are unconscionable and unenforceable." *Id.* The court need not decide whether Intertape's premise—that a provision's status as being standard in the industry necessarily shields itself from being unconscionable—is correct, because Intertape's argument fails to recognize that the substantive unconscionability inquiry considers both the language of the contract and how the language operated in a specific case. *See Razor*, 854 N.E.2d at 621. Even if it is the case that standard provisions in an industry are per se not unconscionable, that does not end the inquiry under Illinois law because the court must also

24

consider how the language operated in practice. The same provision may be reasonable in one instance—for example, the same facts here except the seller fixes the product immediately within a day—but unconscionable in a different set of facts.

Here, as explained above, the court finds Coop's Pretzels has plausibly alleged that in this specific instance, Provision 12 operated in a substantively unconscionable way.

## II.   Does refusing to enforce an unconscionable term violate South Dakota public policy?

Finding Provision 12 plausibly operated in a substantively unconscionable way under Illinois law does not end the inquiry because South Dakota will not enforce choice of law provisions if the out of state law contravenes South Dakota public policy. *See Miller*, 9 F.4th at 1017; *Dunes Hosp. L.L.C. v. Country Kitchen Int'l, Inc.*, 623 N.W.2d 484, 488 (S.D. 2001). Thus, the court must determine whether this finding contravenes South Dakota public policy.

"The primary sources of declarations of public policy in South Dakota are the state constitution, statutes and case law." *Sanford v. Sanford*, 694 N.W.2d 283, 289 (S.D. 2005). South Dakota law provides that "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." *See* SDCL § 57A-2-719(3). The South Dakota Supreme Court has similarly stated that a provision that excludes consequential damages is

"subject to the test of unconscionability." *See Johnson v. John Deere Co.*, 306 N.W.2d 231, 236-37 (S.D. 1981).

Although the South Dakota Supreme Court has suggested that "the contract or clause must be unconscionable at the time of contracting[,]" it also recognized that, in cases in which the remedy fails of its essential purpose, it "cannot divorce entirely the events which occur later." *Id.* at 236 (quoting *Industralease Automated & Sci. Equip. Corp. v. R.M.E. Enter.*, 396 N.Y.S.2d 427, 490 (N.Y. App. Div. 1977). Illinois law similarly forbids enforcement of unconscionable damages limitations. *Razor*, 85 N.E.2d at 621-25. Illinois law may allow courts to consider post-contract events in determining substantive unconscionability to a greater extent compared to South Dakota law, but this difference does not contravene South Dakota public policy. *See Johnson*, 306 N.W. 2d at 236-37; *Razor*, 85 N.E.2d at 621; SDCL § 57A-2-719. Thus, the court applies Illinois law and denies Intertape's motion to dismiss Pretzel Coop's claim for consequential and incidental damages.

## CONCLUSION

Coop's Pretzels has plausibly alleged that Provision 12 of the Purchase Agreement for the Pouch Machine is substantively unconscionable under Illinois law, and this finding does not contravene South Dakota public policy. Thus, it is

ORDERED that Intertape's motion to dismiss Coop's Pretzels' claim for incidental and consequential damages (Docket 35) is denied.

Dated March 13, 2023.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE